IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

ADAM ROSS,
        Plaintiff,                               CASE NO. 1:18-cv-01258-JRS-TAB

v.

BALL STATE UNIVERSITY,
        Defendant.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Adam Ross, by Counsel, files his Response in Opposition to Defendant's Motion for Summary Judgment. As set forth herein, Plaintiff requests the Court deny Defendant's Motion for Summary Judgment with regard to the Title IX cause of action, and dismiss the state law claims so they can be refiled in the proper state court, in accordance with Defendants no consent to jurisdiction of this court.

### 1. STANDARD OF REVIEW

Summary Judgment is appropriate where there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The burden is upon the moving party to prove the non-existence of a genuine issue of material fact. *Healy v. City of Chicago*, 450 F.3d 732 (7th Cir. 2006). Conclusory allegations and self-serving statements without factual support in the record should not be considered by the court. *Bitler Inv. Venture II, LLC v. Marathon Ashland Petroleum, LLC*, 779 F. Supp. 2d 858, 872 (N.D. Ind. 2011).

## II. STATEMENT OF DISPUTED MATERIAL FACTS

Pursuant to Local Rule56-1(b), Plaintiff sets forth the following Statement of Material Facts in Dispute.  Plaintiff's position is, at a minimum, these facts preclude summary judgment in favor of Defendant. 317-229-3746

    1.Plaintiff acknowledges that he has made statements that he did not believe he was intoxicated on the night of the alleged incident.  However, he testified, under oath, that he was incapacitated, within the Defendant's definition of incapacitated, in fact, so drunk that he didn't realize how drunk he was.  (Plaintiff's Appendix, Exhibit A, Deposition of Adam Ross, pp 68, 69, 73).   Additionally, Jane Doe, in discussing the level of intoxication of Plaintiff, stated "he was very intoxicated," Plaintiff was "trying to stay conscious and she told him that she thought he needed to sleep," "he was having trouble holding his water bottle," "She invited him to her room to watch a movie and sober up.", in a rating on a scale of 1-10, she "indicated he was around a 15 when they first met up, when they got to the room and when she first laid down. During the middle of the night and when they had initial discussion/argument, (Jane Doe) indicated he was about 6/7" (Dkt. 40-12, p. 31, paragraph 2 and 40-12, p. 34, paragraph 6).

    2. Plaintiff testified, under oath, that his response to the text message regarding his apology was not for any alleged sexual misconduct, but for being intoxicated around her. (Plaintiff's Appendix, Exhibit A, Deposition of Adam Ross, pp 25-27).

    3. The Summation, authored by Lauren Berger, regarding the November 23, 2015 interview of Jane Doe, (Dkt. 40-12, pp. 30-34), was recorded.  However, Defendant never disclosed to Plaintiff it was recorded and did not transcribe the actual recording, merely

providing a summation. (Plaintiff's Appendix, Exhibit A, Deposition of Adam Ross, pp 80, 81). Furthermore, Plaintiff was never advised that the recording existed or was never afforded the opportunity to hear the recorded interview of Jane Doe before his hearing with the Sexual Misconduct Board. (Plaintiff's Appendix, Exhibit A, Deposition of Adam Ross, pp 82, 83).

4. The Sexual Misconduct Board was not advised of or provided a copy of the recorded interview of Jane Doe, or a verbatim transcript. (Plaintiff's Appendix, Exhibit B, Deposition of Michael Gillilan, pp 20, 21). Additionally, Dr. Michael Gillilan nor Jeffrey Shoup reviewed the actual recordings prior to making their decisions/recommendations. (Plaintiff's Appendix, Exhibit B, Deposition of Michael Gillilan, p. 14, Plaintiff's Appendix, Exhibit C, Deposition of Jeffrey Shoup, pp 15, 16).

5. There is nothing in Defendant's policies or procedures stating the actual recording cannot be provided to SMB members, or to Plaintiff. (Plaintiff's Appendix, Exhibit B, Deposition of Michael Gillilan, p. 20, 21.).

6. Dr. Gillilan did take part in the February 3, 2016 interview of Plaintiff, indicating in his deposition that, "it gave me a little sense of who he was," (Plaintiff's Appendix, Exhibit B, Deposition of Michael Gillilan, p. 40, 41) and I'm not sure that it would help me in making a credibility assessment knowing that I hadn't seen the other person at that point, but, it was certainly different in terms of my ability to kind of hear what and see what he was saying, yeah."(*Id.*).

7. Jeffrey Shoup testified that if any recordings were made during the investigation it should be noted in the final report (Plaintiff's Appendix, Exhibit C, Deposition of Jeffrey Shoup, pp 10).

8. Jeffrey Shoup testified that the only person he interviewed for Plaintiff's claim against Jane Doe, was the Plaintiff. (Plaintiff's Appendix, Exhibit C, Deposition of Jeffrey Shoup, pp 19, 20, 21).

9. Plaintiff indicated that he listened to the recorded interview of Jane Doe after the commencement of this lawsuit, and that the Summation provided in the Final Report was "just completely different" (Plaintiff's Appendix, Exhibit A, Deposition of Adam Ross, pp 47), and that you really don't get the context of Jane Doe's statement without the recording. (Plaintiff's Appendix, Exhibit A, Deposition of Adam Ross, pp 81).

10. Plaintiff also indicated that, after listening to the recorded interview of Jane Doe, that it would have helped the board to have heard the actual recording. (Plaintiff's Appendix, Exhibit A, Deposition of Adam Ross, pp 82).

### III. ARGUMENT

**1. The alleged facts, if true, especially taken in the light most favorable to Plaintiff, raise a plausible inference that Defendant discriminated against Plaintiff based on his gender, and therefore, summary judgment is inappropriate.**

The case law regarding the standard to proceed on a Title IX action in this court cited by Defendant is accurate and controlling, but Defendant's application and analysis of the facts, including the disputed facts above, lends itself to a different possible outcome that this matter was prosecuted in a gender biased manner, thereby making summary judgment inappropriate.

The way the Defendants proceeded in this case is almost exactly what you would expect to see in a case handled in a gender biased manner.  A complaint made by each party against the other on nearly the same basic set of facts, but with each respective party being treated in different manners, both in their respective capacity as victim and accused.   The facts that lend themselves to the proposition that a plausible inference can be drawn that Defendant decided this case based on gender and not merely merit, are as follows:

Jane Doe, a female student, made an allegation against Plaintiff, a male student, which is to be investigated by Defendant.  Defendant assigns it to only female investigators, one with only five (5) hours of training, who promptly take a recorded statement of Jane Doe.  Despite having the actual recorded statement and instead of created an transcribed verbatim stamen, which they have the capacity for as evidenced by their transcribing the for the Sexual Misconduct Board Meetings,  the investigators create a "summation" of the interview and do not note that recorded statement exists in the Final Report.  Defendants never disclose to Plaintiff that they possess the recording, in fact it was not even discovered by Plaintiff until after this lawsuit commenced, and no verbatim transcript was ever made of the interview.  Their "Summation" then becomes the basis of the investigative activity moving forward, and at no point does anyone, other than the two female investigators, review the actual recording.  Furthermore, the Sexual Misconduct Board is not provided with or even advised of the existence of the recording and proceed based on the female investigators' "Summation", as it is never mentioned, even in the Final Report, that said recordings exist. Furthermore, the investigation included talking to Jane Doe's roommate, who was present during the incident, albeit again with non-disclosed taped interview and providing merely a summation of the interview as well.   Then, a recommendation for

sanctions is made against the Plaintiff based on credibility which is defined and based on the summation prepared by the initial investigators. There is little other reason for Defendant to exercise this non-transparent behavior other than to create the outcome they desire on a case.

Then, when Plaintiff files a complaint with Defendant against Jane Doe for the same incident, but under a different context as he was the victim, only a cursory investigation was done, and Dr. Gillilan, the same person who requested Plaintiff be sanctioned without ever listening to the actual recording of the female accuser in the first case, refused to investigate the matter beyond the cursory investigation done by Jeffrey Shoup, a clear and obvious conflict is created. And even more telling is the fact that the Plaintiff, the *only* person to be interviewed for both cases, noticed a distinct difference in how he was treated as a male and how Jane Doe was treated during both investigations.

A plausible inference can be made that the entire process, including the handling of a claim by each party, were handled in such entirely different gender biased manners to force Defendant's gender biased narrative that the male Plaintiff was responsible. In fact, Plaintiff, the one person who listened to the recorded interview and, of course, was present for his own interviews and during the processing of his own complaint, indicates that the Summation and recording of Jane Doe were markedly different and should have been offered to the Board. Furthermore, Plaintiff states that he was treated different when presenting his case as a victim than he heard Jane Doe being treated in the recorded interview. Although the Defendant offers an explanation that this is somehow an "investigative technique" as an option, the more plausible and factual based explanation is that when the male and female where in the exact same positons

as victims and/or accused, the were treated differently. And, that bias is palpable against the Plaintiff in this case.

Despite Defendant's diligent laying out of the procedures followed in both cases, (complaints against and filed by Plaintiff), the way each was handled was vastly different, leaving one to ask, why. Additionally, the known fact that an actual recording of Jane Doe and her roommate witness was taken near the time of the alleged incident and were never verbatim transcribed or shared or reviewed by anyone, including the Title IX coordinator, the Sexual Misconduct Board or the investigator in the complaint filed by Plaintiff against Jane Doe is greatly concerning. However, the fact that its existence was never disclosed to the Plaintiff is telling. Plaintiff testified that he was concerned with the tone of both investigations. When you combine that with the fact, he and all decisions makers in the case were not provided such vital verbatim testimony, it can lead to no other conclusion but that the investigation was "outcome determined."

**2. *Defendant has never indicated that it did not consent, nor object, to the Pendent state claims being heard in Federal Court, but as they now indicate they do not consent, and never did consent, the state cases should be dismissed and remanded to State Court and not disposed of via summary judgment.***

This matter has been pending since April of 2018, and at no point during the proceedings has the Defendant ever indicated that it did not consent to the Pendent state claims being heard in conjunction with the Title IX action. Even in the Case Management Plan, agreed to by the parties, or at the Settlement Conference did Defendant's object or state they would move to dismiss on 11th Amendment grounds. They now do.

Based on Defendant's now stated non consent at this point in the proceedings, although judicial economy would have indicated this should have been raised at the initial pleadings stage

with a Motion to Dismiss and/or Remand to state court, Plaintiff will not try to argue against or change case law. Doing so, no matter how the court ruled, would certainly lead to further motions and probable appeals.

The remedy is simple, dismiss the state law cases so they can be filed in state court, and proceed in this court with the Title IX action only.

**3. *Since the Defendant has indicated it does not consent to the state law claims being heard in this court (Federal), and the Plaintiff has indicated it will not object based on current case law, State Court should properly determine the validity of the State Law claims once this matter is refiled.***

As set forth in the previous section, based on current case law and Defendant's indication they do not consent to the state law claims being heard in Federal Court, to which Plaintiff concedes, the State Law claims should be presented to and decided upon by the appropriate State Court and not decided herein.

Plaintiff requests that the Court deny Defendant's Motion for Summary Judgment on the Title IX cause of action, and to dismiss the Plaintiff's state claims to be filed in the proper state court, as Defendant has indicated they do not consent to Federal jurisdiction.

    Respectfully submitted,

    HOCKER & ASSOCIATES LLC

    /s/ Brett E. Osborne
    Attorney No: 17492-45
    6626 E. 75th St, Suite 410
    Indianapolis, Indiana 46250
    Attorney for Plaintiff

## CERTIFICATE OF SERVICE

       I hereby certify that on October 15, 2019, I electronically filed the foregoing via the CM/ECF system. I certify that a copy of the foregoing was served to the following parties via the CM/ECF system:

Scott E. Shockley
Maura J. Hoff
400 S. Walnut Street, Suite 200
Muncie, IN 47305
sshockley@defur.com
mhoff@defur.com


                                        /s/ Brett E. Osborne
                                        Brett E. Osborne
                                        Attorney No: 17492-45